## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENRY FAHY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MARTIN HORN, Commissioner, Pennsylvania** | : | **No. 99-5086** |
| **Department of Corrections;** | : | |
| **CONNER BLAINE, JR, Superintendent of the** | : | |
| **State Correctional Institution at Greene; and** | : | **THIS IS A CAPITAL CASE** |
| **JOSEPH P. MAZURKIEWICZ, Superintendent** | : | |
| **of the State Correctional Institution at Rockview** | : | |

## MEMORANDUM

**Norma L. Shapiro, J.**                                         **August 26, 2014**

The Court of Appeals has remanded the petition for writ of *habeas corpus* of Henry Fahy

("Fahy") .  The Court of Appeals affirmed this court's decision to deny Fahy's habeas claims on

the guilt phase of his capital trial, vacated its grant of relief on the sentencing phase claims and

remanded the action for consideration of unaddressed sentencing-phase claims.  *See Fahy v.*

*Horn*, 516 F.3d 169, 175-76 (3d Cir. 2008).  This court had denied the remaining sentencing

phase claims as moot because a *Mills* violation entitled Fahy to re-sentencing.  *See Mills v.*

*Maryland*, 486 U.S. 367 (1988) (a sentencing scheme is unconstitutional when it requires the jury

to disregard mitigating factors not found unanimously).  While this court's decision was on

appeal, the United States Supreme Court decided *Beard v. Banks*, 542 U.S. 406 (2004).  In

*Beard*, the Supreme Court held that *Mills* was not retroactively applicable on collateral review.

On remand, the Court of Appeals specifically instructed this court to consider whether

trial and appellate counsel were ineffective for failing to object to a constitutional violation at

1

sentencing.  Fahy's petition for writ of habeas corpus will be granted, but not for counsel's failure to object to what would later be recognized as unconstitutional, the so-called *Mills* violation.  The petition will be granted for: (1) ineffective assistance of trial counsel for failing to develop and present available and compelling mitigating evidence and for suggesting Fahy would likely be released on parole; and (2) the erroneous jury charge that prevented the jury from considering non-statutory mitigating evidence.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 24, 1983, Fahy was tried before a jury with the Honorable Albert F. Sabo, Court of Common Pleas of Philadelphia County, presiding.[1]  The prosecution presented evidence that on January 9, 1981, Fahy entered the home of twelve year-old Nicoletta ("Nicky") Caserta, a neighbor's daughter, had forced sexual intercourse with her and dragged her to the basement. Nicky's corpse was discovered later that day by her stepfather.  The jury, returning guilty verdicts on all counts, convicted Fahy of first-degree murder, rape, burglary, and possession of instrument of crime.

Immediately following the conviction, Judge Albert F. Sabo, allowing no time for preparation, held the penalty phase trial.  In determining that Fahy should receive a sentence of death rather than life imprisonment, the jury found three statutory aggravating circumstances: (1) "The defendant committed a killing during the perpetration of a felony"; (2) "The defendant has a significant history of felony convictions involving the use or threat of violence to the person"; and (3) "The offense was committed by means of torture."[2]  Two mitigating circumstances were

---

[1]  The court's recitation of the factual background quotes extensively from this court's prior opinion.  *See Fahy v. Horn*, No. CIV.A. 99-5086, 2003 WL 22017231 (E.D. Pa. Aug. 26, 2003).

[2]  *See* 42 Pa. Cons. Stat. §§ 9711(d)(6), 9711(d)(9), and 9711(d)(8).

found: (1) "The defendant was under the influence of extreme mental or emotional disturbance"; and (2) "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired."[3]

Fahy's sentence was affirmed on direct appeal. *Commonwealth v. Fahy*, 516 A.2d 689 (Pa. 1986) (*Fahy-1*). Fahy filed a petition under Pennsylvania's Post Conviction Hearing Act, 42 Pa. Cons. Stat. § 9541 (superseded and replaced by the Post Conviction Relief Act ("PCRA") in 1988) ("first PCRA petition"). Judge Sabo dismissed the petition without prejudice because of procedural defects.

The Governor of Pennsylvania signed a death warrant. Judge Sabo denied Fahy's application for a stay of execution. Fahy appealed; the Pennsylvania Supreme Court granted the stay and remanded Fahy's second PCRA petition to Judge Sabo. *Commonwealth v. Fahy,* 645 A.2d 199 (Pa. 1994) (*Fahy-2*).[4] Judge Sabo affirmed the death sentence. *Commonwealth v. Fahy*, Nos. 2283-2289 (Phila. C.C.P. Dec. 8, 1992). Fahy appealed but the Pennsylvania Supreme Court affirmed. *Commonwealth v. Fahy*, 645 A.2d 199 (Pa. 1994) (*Fahy-3*). The United States Supreme Court denied *certiorari*. *Fahy v. Pennsylvania*, 513 U.S. 1086 (1995).

The Governor then signed a second death warrant and the Pennsylvania Supreme Court granted a stay of execution to permit Fahy to file his third PCRA petition. That petition was denied by Judge Sabo on October 25, 1995, Findings of Fact and Conclusions of Law ("1995 Opinion"). Fahy appealed again to the Pennsylvania Supreme Court. During the appeal's pendency, Fahy moved to waive his rights to all appellate proceedings and collateral relief. The

---

[3] *See* 42 Pa. Cons. Stat. §§ 9711(e)(2) and 9711(e)(3).

[4] During the second PCRA petition's pendency, Fahy filed a writ of habeas corpus in federal district court; the court dismissed the habeas petition without prejudice for failure to exhaust state remedies.

Pennsylvania Supreme Court ordered Judge Sabo to determine whether Fahy fully understood the consequences of such a waiver.  Fahy appeared before Judge Sabo, who found him competent and granted the waiver.  Twelve days later, Fahy's attorneys advised the Pennsylvania Supreme Court that Fahy no longer wished to waive his rights.  The Pennsylvania Supreme Court unanimously affirmed Judge Sabo.  *See Commonwealth v. Fahy*, 700 A.2d 1256 (Pa. 1997) (*Fahy-4*).

On November 12, 1997, Fahy's counsel filed a fourth PCRA petition.  Judge Sabo dismissed this petition because it was time-barred and failed to state a *prima facie* case that a miscarriage of justice had occurred.  The Pennsylvania Supreme Court affirmed.  *Commonwealth v. Fahy*, 737 A.2d 214 (Pa. 1999) (*Fahy-5*).[5]

Fahy filed a motion for a stay of execution and an amended *habeas* petition in federal court.  The district court, granting the stay, ruled the amended *habeas* petition should be treated as a first federal petition because the prior federal *habeas* petition had been dismissed without prejudice.  Chief Judge Giles, writing for the district court, held that despite the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), Fahy's petition was timely because of statutory and equitable tolling.  The Court of Appeals affirmed on equitable tolling grounds:

> If we refuse to equitably toll the statute, then we would deny [Fahy] federal review of his claims.  Fahy diligently asserted his claims and the strategic choices he made during the appeal process were reasonable.  When state law is unclear regarding the operation of a procedural filing requirement, the petitioner files in state court because of his or her reasonable belief that a [habeas] petition would

---

[5]  On January 27, 2006, Fahy filed his fifth PCRA petition, involving a claim not raised before this court. The Court of Common Pleas denied the petition and the Pennsylvania Supreme Court affirmed.  *Commonwealth v. Fahy*, 959 A.2d 312 (2008).

> be dismissed as unexhausted, and the state petition is ultimately denied on these grounds, then it would be unfair not to toll the statute of limitations during the pendency of that state petition up to the highest reviewing state court.  We will therefore equitably toll the AEDPA's statute of limitations.  We elect to exercise this leniency under the facts of this capital case[] where there is no evidence of abuse of the process.
>
> We therefore affirm the order of the District Court, albeit on equitable tolling grounds and not on statutory tolling grounds.

*Fahy v. Horn*, 240 F.3d 239, 245-46 (3d Cir. 2001).

The Court of Appeals refused to hear the action *en banc*, and the United States Supreme Court denied *certiorari*.  *Horn v. Fahy*, 534 U.S. 944 (2001).  Fahy's *habeas* petition was returned to the district court.  The court found Fahy competent to have waived his appellate and collateral review rights, but ruled that Fahy's "waiver . . . was not knowing and voluntary."  *Fahy v. Horn*, No. 99-5086, 2003 WL 22017231, at *57 (E.D. Pa. Aug. 26, 2003).

The court then denied all Fahy's claims of constitutional error in the guilt phase, but granted Fahy's *habeas* petition for the penalty phase violation of *Mills v. Maryland*, 486 U.S. 367 (1988):

> Fahy's fourth claim, in which he argues he is entitled to relief [under *Mills v. Maryland*] because the penalty phase jury instructions and verdict sheet unconstitutionally indicated to [the] jury that it had to find unanimously any mitigating circumstance before it could give effect to that circumstance, is meritorious, and Fahy's death sentence will be vacated.

*Fahy*, 2003 WL 22017231, at *57.   The court declined to address the remaining penalty phase claims as moot.  Both Fahy and the Commonwealth appealed.

Before the Court of Appeals ruled on the pending appeal, the United States Supreme Court decided *Beard v. Banks*, 542 U.S. 406 (2004).  In *Beard*, the Supreme Court held in a 5-4 decision that *Mills* was not retroactively applicable on collateral review because it announced a

new rule of constitutional criminal procedure not falling within the exceptions to nonretroactivity

set forth in *Teague v. Lane*, 489 U.S. 288 (1989). *Beard*, 542 U.S. at 420. The Court of Appeals

subsequently vacated the grant of *habeas* relief under *Mills* and held: (1) Fahy's waiver of

appellate and collateral review was invalid because the state trial court judge refused to allow

petitioner's counsel to present evidence of coercion; (2) Fahy's claims were not otherwise

procedurally defaulted; and (3) Fahy was not entitled to relief on claims of constitutional error in

the guilt phase. *Fahy*, 516 at 186-89.[6] The Court of Appeals directed the court on remand to

"consider whether trial and appellate counsel were ineffective for failing to object to and litigate

the *Mills* violation" and the remaining sentencing-phase claims, previously denied as moot. *Id*. at

205.

The parties submitted supplemental memoranda and replies concerning the issues the

Court of Appeals remanded. Fahy's supplemental memorandum addressed eight claims:

> Claim A: Trial Counsel Was Ineffective at the Sentencing Phase for
> Failing to Reasonably Prepare for Capital Sentencing and Failing to
> Develop and Present Available and Compelling Mitigating Evidence;
>
> Claim B: Trial and Appellate Counsel Were Ineffective for Failing
> to Object to and Litigate the Claim that the Penalty Phase Instructions
> Unconstitutionally Precluded Jurors from Weighing Mitigating
> Factors Unless the Unanimous Jury First Found Those Factors;
>
> Claim C: Fahy's Death Sentence Violates the Sixth, Eighth and
> Fourteenth Amendments to the United States Constitution Because
> the Jury Was Not Permitted to Consider and Give Effect to the Non-
> statutory Mitigating Evidence that Was Presented;
>
> Claim D: Trial Counsel Was Ineffective During the Sentencing
> Phase for Suggesting Fahy Would Likely Be Released on Parole and

---

[6] The Court of Appeals's opinion mistakenly cited the similarly-captioned decision in *Beard v. Banks*, 548 U.S. 521 (2006) (concerning the applicability of the First Amendment to prison regulations), not *Beard v. Banks*, 542 U.S. 406 (2004). The Court's decision to vacate *habeas* relief based on Fahy's *Mills* claim is clear and uncontested.

for Failing to Object or Request an Appropriate Instruction in Response to the Prosecutor's Argument that Fahy Would Likely Be Released and Commit Violent Acts Unless Sentenced to Death;

Claim E:  The Prosecutor Misleadingly Diminished the Jury's Sense of Responsibility for Imposing Sentence upon Fahy, in Contravention of *Caldwell v. Mississippi*, and in Violation of His Rights under the Sixth, Eighth, and Fourteenth Amendments;

Claim F: Fahy's Sentence Must Be Vacated Because of Prosecutorial Misconduct During the Sentencing Phase of His Capital Trial, in Violation of His Rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

Claim G:  Fahy's Sentence Must Be Vacated Because the Jury Was Unconstitutionally Instructed on the "Torture" Aggravating Circumstance in Violation of His Rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution;

Claim H:  Fahy Is Entitled to Relief from His Death Sentence Because Pennsylvania's (D)(9) "Significant History" of Violent Felony Convictions Aggravating Circumstance Is Unconstitutionally Vague in Violation of the Eighth and Fourteenth Amendments to the United States Constitution.

*See* Pet.'s Supp. Memorandum of Law Following Remand, paper no. 87.[7]  The issues not argued in Fahy's supplemental memorandum have been waived.[8]  The court will grant Fahy's petition for a writ of *habeas corpus* as to Claims A, C and D.  Although the remaining claims are moot based on this grant, the court will address each in turn on remand, as instructed by the Court of Appeals.

---

[7]  In this opinion, the court will reference petitioner's claims as renumbered in his Supplemental Memorandum of Law Following Remand.

[8]  The court notes that this opinion has been delayed because of the complexity and volume of materials.

## II.     JURISDICTION

A federal court has jurisdiction over a petition for a writ of *habeas corpus* challenging state confinement in violation of the United States Constitution.  AEDPA, 28 U.S.C. §§ 2241, 2254.

## III.    STANDARD OF REVIEW

Before seeking *habeas* relief in federal court, a petitioner must exhaust all available remedies in state court in accordance with the state's firmly established procedural rules.  *See* 28 U.S.C. §§ 2254 (b), (c); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Here, the Court of Appeals affirmed this court's conclusion that neither default by waiver nor the PCRA time-bar were firmly established or regularly followed rules as of the date Fahy's default occurred.  They cannot be considered "adequate" state procedural rules barring consideration of Fahy's claims. *See Fahy*, 516 F.3d at 188-89.

AEDPA mandates deference to a state court's adjudication on the merits of a federal claim, unless the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §§ 2254(d)(1), (2).  A state court's factual determinations are presumed correct; the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  A state court decision is "contrary to" Supreme Court precedent if the state court reached a "a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts. "  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).[9]

---

[9] Justice O'Connor, writing for the majority with respect to Part II of the opinion.

This court in its last opinion found "Judge Sabo's 1995 opinion constitutes an 'adjudication on the merits' of the claims considered therein. . . .  Judge Sabo's October 25, 1995, Findings of Facts, Conclusions of Law, Adjudication are entitled to deference under the AEDPA."[10]  *Fahy*, 2003 WL 22017231, at *34.  The Court of Appeals affirmed this finding. *Fahy*, 516 F.3d at 197.  The claims the Pennsylvania Supreme Court considered will also be reviewed under this deferential standard.[11]

When the state court adjudication does not reach a claim's merits, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA."  *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The claims raised for the first time in the fourth PCRA petition will be reviewed *de novo* because the fourth PCRA petition was not decided on the merits.[12]  *Id.*

## IV.   PETITIONER'S CLAIMS

### A.   Ineffective Assistance of Counsel (Claims A, B, and D)

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  A petitioner claiming ineffective assistance must demonstrate counsel performed deficiently and petitioner was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Outten v. Kearney*, 464 F.3d 401, 414 (3d Cir. 2006).  "The benchmark for judging any claim of ineffectiveness must be

---

[10]  Judge Sabo addressed claims A, B, D, E, and part of claim F on the merits.  *See* 1995 Opinion at 24-26 (Claim A), 39-40 (Claim B), 41 (Claim D), 26-29 (Claim E), 31-32 and 35-36 (Claim F).

[11]  The Pennsylvania Supreme Court considered aspects of Claim G in deciding petitioner's ineffective assistance of counsel claim but did not directly address it on the merits.  *See Fahy-3*, 645 A.2d at 202-04.  The Pennsylvania Supreme Court addressed Claim H on the merits.  *See Fahy-1*, 516 A.2d at 697-98.

[12]  All claims petitioner currently asserts were raised in his fourth PCRA petition.  Only claims "C" and "G" are reviewed *de novo*.  *See* Pet.'s Fourth PCRA Pet., Resp't Ex. 5 at 66 (Claim A), 102 (Claim B), 59 (Claim C), 94 (Claim D), 106 (Claim E), 52 (Claim F), 111 (Claim G), 128 (Claim H).

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  The court, making  every effort to eliminate the distorting effects of hindsight, must decide whether counsel acted in an objectively reasonable manner in accordance with professional norms.  *Id.* at 688-90; *Outten*, 464 F.3d at 414.  Judicial scrutiny is highly deferential to counsel.  *Strickland*, U.S. 466 at 689-90.

Even if counsel's representation were deficient, counsel was not ineffective under *Strickland* unless counsel's conduct prejudiced the client.  *Id.* at 691-92; *Outten*, 464 F.3d at 414. When a petitioner challenges a death sentence, prejudice is established if, but for counsel's deficiency, at least one juror would have probably balanced the mitigating and aggravating circumstances favorably to petitioner.[13]  *See Wiggins v. Smith*, 539 U.S. 510, 537 (2003) ("Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance."); *Strickland*, 466 U.S. at 695.

In Claim A, Fahy contends trial counsel's representation was deficient because counsel failed to investigate mitigating evidence of Fahy's mental illness and organic cognitive impairments.  Trial counsel knew Fahy was physically and sexually abused as a child, suffered head injuries in an automobile accident, experienced hallucinations and seizures, and made numerous suicide attempts.  N.T. 10/12/95 at 6-7, Resp't Ex. 2.  Trial counsel also knew of, but failed to review, mental health evaluations Fahy received in connection with his prior

---

[13]  Under Pennsylvania law, the death sentence: (1) may only be imposed by a unanimous jury; and (2) must be imposed if the aggravating circumstances outweigh the mitigating circumstances.  42 Pa. Cons. Stat. § 9711(c)(iv).

convictions.  *Id.* at 5-6.  Trial counsel chose not to consult a mental health expert or further investigate the mitigating evidence.

Fahy contends a reasonable attorney would have thoroughly investigated and developed a meaningful penalty phase defense by using the records, prior evaluations, and mental health testimony specifically addressing the mitigating evidence.  He contends the evidence would have corroborated his testimony about his mental health and rebutted the prosecutor's argument that Fahy's testimony was self-serving and manipulative.  The evidence also would have explained the severity and behavioral consequences of Fahy's cognitive impairment, mitigated his moral culpability, and weakened the aggravating circumstances the prosecution argued.  Fahy argues this evidence would certainly have led at least one juror to strike a different balance between aggravating and mitigating circumstances.

The Commonwealth contends trial counsel was not deficient, but made reasoned, strategic decisions in the penalty phase defense.  Trial counsel presented extensive evidence from Fahy, corroborated by his mother, of his troubled family background and his mental and emotional difficulties.  Counsel presented evidence that led the jury to find two mitigating circumstances:  Fahy "was under the influence of extreme mental or emotional disturbance"; and Fahy's capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired."  Verdict Sheet 3.

The Commonwealth also contends trial counsel had a reasonable basis not to present a mental health expert because expert testimony would have seriously weakened the mitigation evidence Fahy's trial counsel presented.  The testimony would have opened the door to cross-examination about Fahy's mental health records, suggesting Fahy does not suffer from a major mental illness, but is a "sociopath" with an "antisocial personality disorder."  Respondent's

Supplemental Memorandum of Law, paper no. 86, at 43.  The Commonwealth contends even assuming deficient representation, Fahy failed to establish prejudice because the jury found two mitigating circumstances relevant to Fahy's mental health.

The state court conducted an evidentiary hearing on October 12 and 13, 1995.  Judge Sabo found counsel's decision not to retain a mental health expert was a strategic attempt to avoid eliciting damaging evidence on cross-examination.  He made detailed findings of fact regarding trial counsel's work, *see* 1995 Opinion, Findings of Fact ¶¶ 12-23, and the usefulness of expert testimony at the sentencing hearing, *id.* ¶¶ 34-38.  Judge Sabo also made conclusions of law regarding trial counsel's decision not to call an expert witness during the sentencing phase. *Id.* ¶¶ 16-20.  Judge Sabo's findings are entitled to deference.  *See Fahy*, 516 F.3d at 189; *Fahy*, 2003 WL 22017231, at *34.  However, this court finds Judge Sabo's determinations unreasonable in light of testimony on the record from trial counsel.  Judge Sabo's decision-making was strikingly similar to his actions during the waiver proceedings, in that he applied his own view of what was appropriate rather than permitting and evaluating proffered evidence.[14]

Supreme Court precedent governs whether trial counsel's failure to investigate mitigation evidence renders the representation constitutionally ineffective.  The deference owed to counsel's strategic judgments not to present certain mitigating evidence is defined in terms of the adequacy of the investigations supporting those judgments.  *Wiggins*, 539 U.S. at 521.

> [S]trategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable; and strategic choices made after
> less than complete investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on investigation.  In
> other words, counsel has a duty to make reasonable investigations or to make a

---

[14] The Court of Appeals affirmed this court's decision that Fahy's waiver of his rights to appellate and collateral review was invalid.  The Court of Appeals highlighted that Judge Sabo failed to adequately probe into Fahy's knowledge of his rights, ignored that Fahy had not spoken with counsel about appellate rights, and blatantly disregarded counsel's objections to the judge's questioning. *Fahy*, 516 F.3d at 185-86.

reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91.  The court examines the reasonableness of both counsel's

decision not investigate mitigating evidence and counsel's decision not to present that mitigating

evidence.

In *Porter v. McCollum*, 558 U.S. 30 (2009) (per curiam), counsel failed to discover and

present extensive evidence of defendant's "abusive childhood, his heroic military service and the

resulting trauma he suffered from it, his long-term substance abuse, and his impaired mental

health and mental capacity." *Id.* at 33.  Defendant was sentenced to death.  The Court found

counsel's representation deficient because his investigation of defendant's background did not

satisfy prevailing professional norms.  *Id.* at 39-40.  Counsel did not obtain defendant's school,

medical, or military records, or interview any members of defendant's family.  *Id.* at 39.  The

Court held that the petitioner had established the prejudice prong because there was a reasonable

probability that the sentencing judge and the advisory jury may have reached a different

conclusion had this evidence been presented.  *Id.* at 42.

In *Rompilla v. Beard*, a death-row defendant filed a state court post-conviction relief

petition alleging ineffective assistance by trial counsel in failing to present significant mitigating

evidence of defendant's childhood, mental capacity and health, and alcoholism.  545 U.S. 374, at

391-92 (2005).  The Supreme Court found the information available to trial counsel contained

"red flags" requiring further investigation.  *Id.* at 392.  "[O]nce counsel had an obligation to

examine the [prior conviction] file, counsel had to make reasonable efforts to learn its contents;

and once having done so, they could not reasonably have ignored mitigation evidence or red flags

simply because they were unexpected."  *Id.* at 391 n.8.

In *Wiggins v. Smith*, trial counsel failed to obtain a social history report that would have revealed "evidence of the severe physical and sexual abuse petitioner suffered at the hands of his mother and while in the care of a series of foster parents."  539 U.S. at 516.  Petitioner was sentenced to death.  The Supreme Court held counsels' performance constitutionally deficient because they "abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources."  *Id*. at 524.  The scope of their investigation was also unreasonable in light of what counsel discovered in petitioner's records.[15]  *Id*. at 525.

In *Williams v. Taylor*, 529 U.S. 362 (2000), counsel failed to discover and present "documents prepared in connection with [defendant's] commitment when he was 11 years old that dramatically described mistreatment, abuse, and neglect during his early childhood, as well as testimony that he was 'borderline mentally retarded,' had suffered repeated head injuries, and might have mental impairments organic in origin."  *Id.* at 370.  Counsel failed to investigate mitigation evidence "not because of any strategic calculation but because they incorrectly thought that state law barred access to such records."  *Id.* at 395.  Defendant was sentenced to death.  The Supreme Court held "trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background."  *Id.* at 396.

---

[15]  The Department of Social Services records revealed several relevant facts:

> [Wiggins's mother was a chronic alcoholic]; Wiggins was shuttled from foster home to foster home and displayed some emotional difficulties while there; he had frequent, lengthy absences from school; and, on at least one occasion, his mother left him and his siblings alone for days without food.  As the Federal District Court emphasized, any reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses, particularly given the apparent absence of any aggravating factors in [defendant's] background.

*Id*. at 525.

As in *Wiggins*, Fahy's counsel "abandoned [his] investigation of petitioner's background after having acquired only rudimentary knowledge of [Fahy's] history from a narrow set of sources." 539 U.S. at 524. Fahy's counsel, like counsel in *Porter*, *Rompilla*, *Wiggins*, and *Williams*, failed to investigate numerous red flags and "ignored pertinent avenues for investigation of which he should have been aware." *Porter*, 558 U.S. at 40. Fahy had fourteen surviving siblings at the time of sentencing, yet counsel did not contact any of them to substantiate the abuse Fahy allegedly suffered from one of his brothers and father. Counsel also interviewed only one person who knew Fahy: Fahy's mother. Counsel failed to investigate Fahy's own account of his mental illness, epilepsy, and brain damage, his psychiatric commitment for suicidal behavior, and Dr. Edwin Camiel's and Dr. Robert Stanton's competency evaluations.

Counsel called only Fahy and Fahy's mother as witnesses. Counsel did not call any mental health professionals to discuss the meaning of Fahy's organic brain damage, epilepsy, psychotropic medications, history of abuse and neglect, or suicide attempts. Uncontested testimony reveals Fahy's trial counsel did not even consider retaining a mental health expert to evaluate Fahy's psychiatric condition. Counsel testified at the 1995 hearing that: (1) he "frankly did not think about" retaining an expert when he tried the case, N.T. 10/12/1995 at 13; (2) "if [he] had the matter to do over again [he] probably would have retained an expert for this purpose," *id.*; (3) "it could have been a mistake on [his] part not to [use an expert]," *id.*; and (4) he did not believe he reviewed "any specific doctor's reports or psychiatric reports" before the penalty phase, *id.* at 30. Trial counsel's decision not to present expert testimony was made without any investigation into what an expert might conclude. As in *Williams*, counsel's decision not to investigate mitigation evidence was not strategic. *See* 529 U.S. at 395. Judge

Sabo's conclusion that trial counsel's assistance was effective is objectively unreasonable.  The evidence from the 1995 hearing clearly contradicts Judge Sabo's finding that counsel's decision not to retain a mental health expert was a strategic attempt to avoid eliciting damaging evidence on cross-examination.

The jury found two mitigating factors:  Fahy "was under the influence of extreme mental or emotional disturbance"; and Fahy's capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired."  Verdict Sheet 3. Had the jury been fully informed of Fahy's emotional and psychological problems, childhood physical and sexual abuse, and the significance of his epilepsy, the jury could have found a third factor, mitigating circumstance "h":  "Any other mitigating matter concerning the character or record of the defendant or the circumstances of his offense."  Unlike the other two mitigating factors, which both address Fahy's state of mind as it applied to the offense, factor "h" permitted jurors to consider aspects of Fahy's childhood, relationships, and general mental health without regard to how they affected his criminal conduct.  The Supreme Court has repeatedly asserted that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, *may be less culpable than defendants who have no such excuse." See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (emphasis added) (citation omitted)*; see also Porter*, 588 U.S. at 41; *Boyde v. California*, 494 U.S. 370, 382 (1990).[16]

The jury also may have struck a different balance between the aggravating factors and mitigating factors it found.  Expert testimony could have revealed evidence of Fahy's emotional

---

[16] *See infra* at 27 for further discussion of mitigating factor "h" in the court's analysis of Claim C.

and psychological difficulties; the nature and behavioral consequences of his organic brain damage; and post-traumatic stress caused by his abusive and troubled childhood.  It could have corroborated Fahy's testimony about his mental illness and cognitive impairments.  Without the corroboration, the testimony of Fahy and his mother were the core of the penalty phase defense. The jury could not appreciate the true extent of Fahy's mental health impairments because counsel did not present the mental health records or an expert evaluation.  Had the jury heard from an expert — or from anyone who could testify to Fahy's kindness or good character — "there is a reasonable probability that at least one juror would have struck a different balance" at sentencing.  *Wiggins*, 539 U.S. at 537.

Accordingly, Fahy was prejudiced by counsel's deficient representation at the sentencing phase of his trial.  Fahy is entitled to *habeas* relief on Claim A.

In Claim D, Fahy argues that trial counsel was ineffective during the sentencing phase for suggesting Fahy would likely be released on parole and for failing to object or request an appropriate instruction in response to the prosecutor's argument that Fahy would likely be released and commit violent acts unless sentenced to death. While arguing for a life sentence, Fahy's trial counsel stated:

> I am suggesting to you that Henry Fahy is essentially a kind, decent individual who went astray; who unfortunately did things and didn't know why he did them.  But, down deep, you're looking at a decent human being, a human being who probably, *if you grant him his life, if he ever does get out of jail, he won't get out until he's a very old man.*

N.T. 1/29/1983 at 1030 (emphasis added).  The prosecutor responded:  (1) "Are we going to let [Fahy] graduate from prison the way he graduated from being a child rapist into a child killer?"; (2) "How many more people does he have to kill?"; and (3) "Nor, would he ever give a damn for anyone else if he got out of prison and did it again."  N.T. 1/29/1983 at 1038-39.

17

Fahy contends trial counsel was ineffective for suggesting Fahy could be released on parole, and for neither objecting to the prosecutor's future dangerousness statements nor requesting a curative instruction from the court.  Judge Sabo declined to find Fahy's trial counsel ineffective and held the prosecutor's remarks were proper in their context.  *See* 1995 Opinion, Conclusions of Law ¶¶ 37-40, 52.  Judge Sabo found:  (1) the "graduate from prison" rhetoric was fair in light of the guilty verdict and defense counsel's suggestion that Fahy should be excused because of his mental problems, *id.* ¶ 39; (2) the prosecutor's question on the number of murders necessary to justify imposition of the death penalty was a direct response to defense counsel's mention of Roger Buehl, another defendant who was convicted of killing three people, *id.* ¶ 38; and (3) the prosecutor's suggestion that Fahy would recidivate if released rebutted defense counsel's assertion that Fahy is a "decent human being" who could potentially be released from prison as a very old man. *Id.* ¶ 40.  Judge Sabo also found that trial counsel's remark that if defendant were ever released from prison it would be when defendant was a very old man, was part of a strategy to evoke sympathy from the jury and portray Fahy as a victim of oppressive circumstances.  *Id.* ¶ 52.  Contrary to Fahy's contention, Judge Sabo's 1995 Opinion fully addressed Fahy's claim.  AEDPA's deferential standard applies.

Fahy relies upon *Carpenter v. Vaughn*, 296 F.3d 138 (3d Cir. 2002) and *Cross v. Price*, No. 95-614, 2005 WL 2106559 (W.D. Pa. Aug. 30, 2005).  In *Carpenter*, counsel was found ineffective at the penalty phase for not objecting to the trial judge's highly misleading response to a jury question about defendant's eligibility for parole if sentenced to life imprisonment.  296 F.3d at 141.  During jury deliberation, the jury asked the court, "Can we recommend life imprisonment with a guarantee of no parole[?]"  *Id.* at 156.  The court responded:

> The answer is that *simply, no absolutely not*.  Moreover, ladies and gentleman, you talk about recommendation.  I don't know exactly what you mean, but I assume you

remember . . . that you as a jury at this point are not making a recommendation of death or life imprisonment.  I hope you understand that."

*Id.*  Trial counsel did not object to the answer or request clarification.  The jury returned a death sentence.

The Court of Appeals found trial counsel's failure to object and request a curative instruction fell below the objective standard of reasonableness because the court's answer "clearly conveyed the misleading impression that [life imprisonment without parole] was not available [as a sentence]."  *Id.* at 157.  The court's message was "potentially devastating" because the defendant was a "homicidal recidivist" and the jury was obviously concerned about the possibility of future parole.  *Id.*

In *Cross*, the mention of parole came from the defendant instead of the court.  Cross professed at his penalty hearing:

> I stand before God Almighty as an innocent man.  While you found[] me guilty the guilty parties are on the street.  Eventually they are going to kill again.  When they kill again possibly a confession could come forth.  If you send me to the electric chair it won't help me any.  *If you send me to a penitentiary for life, at least I could be released and get on with my life.*  I plead with this jury that you come back with a life sentence.  *And it is going to be a long sentence since I have time waiting for me in Virginia of fifteen years.  From my understanding I will spend twenty years before I am eligible for parole here.*

2005 WL 2106559, at *2.  Counsel failed to request a curative instruction and the jury brought back a death sentence.  Compelled by the similarities with *Carpenter*, the district court held that trial counsel's failure to request a curative instruction — or to properly prepare his client — violated Cross's constitutional right to effective assistance of counsel.  *Id.* at *9.

Under Pennsylvania law at the time of Fahy's trial (and today):

> a defendant convicted of first-degree murder had to be sentenced to death or life imprisonment, 18 Pa. C.S. § 1102(a), and a defendant

> sentenced to life could not be paroled, 42 Pa. C.S. § 9756(c); 61 Pa.
> C.S. § 331.21; *Commonwealth v. Yount*, 419 Pa. Super. 613, 615
> A.2d 1316 (1992), unless the sentence was first commuted by the
> governor to a term of years. *See Meyers v. Gillis*, 93 F.3d 1147, 1154
> (3d Cir. 1996).

*Carpenter*, 296 F.3d at 156.  "[W]here the State puts the defendant's future dangerousness in

issue, and the only available alternative sentence to death is life imprisonment without the

possibility of parole, due process entitles the defendant to inform the . . . jury . . . that he is parole

ineligible." *Carpenter*, 293 F.3d at 144 (quoting *Simmons v. South Carolina*, 512 U.S. 154, 178

(1994) (court must give an instruction about defendant's parole ineligibility if prosecution argues

future dangerousness)).  The jury should not consider whether a life sentence might be pardoned

or commuted when considering the proper penalty to impose.  *See Commonwealth v. Johnson*, 81

A.2d 569, 573 (Pa. 1951).  The jury should assign punishment based on the determined relevant

facts and circumstances.  *Id.*

Fahy's counsel, by mentioning the potential for future release, indirectly suggested a life

sentence would not necessarily mean life.  Counsel's error was similar to the constitutional errors

recognized in *Carpenter* and *Cross*.  As in *Carpenter* and *Cross*, the jury was misinformed about

defendant's prospect for parole if not sentenced to death.

Under *Strickland*, petitioner must show his trial counsel's deficient performance was

prejudicial.  466 U.S. at 687.  Here, the jury returned a penalty verdict of death.  Defense counsel

directly suggested that Fahy might eventually be released from prison and provoked the

prosecutor to reference Fahy's future dangerousness three times.  There is a reasonable

probability that had the jury not been concerned about Fahy's future dangerousness, it would not

have returned a death verdict.  Defense counsel's closing remarks violated Fahy's Sixth

Amendment right to effective counsel.

Fahy's counsel provoked the prosecutor's future dangerousness response by suggesting if Fahy ever left prison, he would be a very old man.  Judge Sabo reasonably determined the prosecutor properly responded on Fahy's future dangerousness.  Fahy's counsel was not ineffective for failing to object to the prosecutor's properly admitted response or failing to request a curative instruction, but he was ineffective for provoking the response.[17]  No reasonable strategy can justify trial counsel's opening the door to arguments about future dangerousness. Fahy is entitled to habeas relief on Claim D because his trial counsel was ineffective for suggesting Fahy could be released on parole.

Fahy's final ineffective assistance of counsel claim is that both trial and appellate counsel were ineffective for failing to object to and litigate the jury instructions later found unconstitutional in *Mills v. Maryland*.  Fahy previously claimed his petition for habeas relief should be granted because the penalty phase jury instructions and verdict sheet violated *Mills v. Maryland* by requiring that the jury "find any mitigating circumstance unanimously before it could give effect to that circumstance."[18]  *Fahy*, 2003 WL 22017231 at *41.  This court agreed

---

[17]   At the time of Fahy's trial, the Supreme Court had not decided *Simmons v. South Carolina*, 512 U.S. 154 (1994) and *Kelly v. South Carolina,* 534 U.S. 246 (2002), in which it found due process required the court to instruct the jury that a defendant would not be eligible for parole if the prosecution argued future dangerousness. "[A] jury cannot be presented with generalized arguments regarding the defendant's future dangerousness while also being prevented from learning that the defendant will never be released on parole." *Robinson v. Beard*, No. 11-9003, 2014 WL 3906922, at *7 (3d Cir. Aug. 12, 2014).  While the prosecutor's statements certainly argue Fahy's future dangerousness, the court will not find counsel ineffective for failing to request an instruction on Fahy's ineligibility for parole when federal law at the time did not require such an instruction.   There is "no general duty on the part of defense counsel to anticipate changes in the law." *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)

[18]   The first page of the penalty phase verdict sheet given to and used by the jury reads:

> We, the jury, having heretofore determined that the above-named defendant is guilty of murder of the first degree, do hereby further find that:

> (1) We, the jury, *unanimously* sentence the defendant to:

> ____Death
> ____Life Imprisonment

and granted the petition based on *Mills*. *Id.* at *57. The Supreme Court then decided *Beard v. Banks*, holding that *Mills* was not retroactively applicable on collateral review because it announced a new rule of constitutional criminal procedure not falling within the exceptions to nonretroactivity set forth in *Teague v. Lane*. 542 U.S. at 420. The Court of Appeals vacated the grant of *habeas* relief and directed this court to consider whether trial and appellate counsel were ineffective for failing to object to and litigate the *Mills* violation. *Fahy*, 516 F.3d at 205.

Fahy first raised his *Mills* claim in his third PCRA petition. Judge Sabo addressed the claim in his 1995 Opinion:

> 47. Trial counsel was not ineffective for failing to object to this Court's instructions on mitigating circumstances or the verdict sheet because this Court did not communicate to the jury that it had to unanimously find mitigating factors (N.T. 1041-42). The Pennsylvania Supreme Court already has addressed the adequacy of the Pennsylvania sentencing scheme and expressly found that it does not "state or infer a requirement that any given mitigating circumstance . . . be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict. *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27, 31 (1989). In addition, the Supreme Court has held to be fully proper a jury instruction that was virtually identical to the instruction given in this case.
>
> 48. The verdict sheet used here was almost identical to a verdict sheet that was accepted by the Supreme Court and thus was entirely proper. *See Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (1989).

---

(2) (To be used only if the aforesaid sentence is death)

We, the jury, have found *unanimously*

_____ at least one aggravating circumstance and no mitigating circumstance. The aggravated circumstance(s) is/are _____.

_____ one or more aggravating circumstances which outweigh any mitigating circumstances. The aggravating circumstance(s) is/are _____.
The mitigating circumstance(s) is/are _____.

First Degree Murder Verdict Penalty Determination Sheet 1, Pet.'s's App., Ex. 12 ("Verdict Sheet") (emphasis added).

49.   Defendant's challenge to this Court's instructions on mitigating circumstances also is meritless because it is based on *Mills v. Maryland*, which was decided long after the verdict in this case and cannot be applied retroactively.  Moreover, defendant has failed to show how this Court's instructions on murder or the verdict sheet prejudiced him or resulted in an inherently unreliable verdict.

1995 Opinion, Conclusions of Law ¶¶ 47-49 (citations omitted).  The 1995 Opinion is an adjudication on the merits for the claims considered therein.  *Fahy*, 516 F.3d at 189; *Fahy*, 2003 WL 22017231, at *34.  Because Judge Sabo's opinion addressed this ineffective assistance of counsel claim, Judge Sabo's findings are entitled to deference.

Fahy cites *Everett v. Beard*, 290 F.3d 500, 514 (3d Cir. 2002), and the American Bar Association's *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003 ed.) ("2003 ABA Guidelines")[19] for the proposition that competent counsel must raise a potentially meritorious claim before it is confirmed the claim will be successful.  In *Everett*, the Court of Appeals considered whether trial counsel was ineffective for not objecting to instructions permitting the jury to convict defendant of first-degree murder when it was defendant's accomplice, and not defendant, who intended to kill the victim.  Fahy contends the Court of Appeals found Everett's counsel ineffective for failing to object to the jury instructions despite unsettled precedent.  The court actually found counsel ineffective because the jury instructions "were directly contrary to the latest applicable Pennsylvania appellate court decision" and wholly "inconsistent with due process."  *Everett*, 290 F.3d at 513; *see also Priester v. Vaughn*, 382 F.3d 394, 397 n.2 (3d Cir. 2004) ("We note that in *Everett*, the accomplice liability instruction was patently erroneous as a matter of law . . . .  [T]rial counsel was

---

[19] Fahy's argument is not persuasive to the extent it presents the 2003 ABA Guidelines as inexorable commands with which all capital defense counsel must fully comply.  *Bobby v. Van Hook*, 130 S.Ct. 13, 17 (2009).  ABA guidelines are "guides to determining what is reasonable, but they are only guides."  *Strickland*, 466 U.S. at 688.

ineffective for failing to object to an instruction . . . [when a] Pennsylvania Superior Court decision filed well before Everett's trial should have given counsel a basis to object.").

The Commonwealth cites several cases for the rule that counsel cannot be held ineffective for failing to predict changes in the law.  In *United States v. Davies*, 394 F.3d 182 (3d Cir. 2005), petitioner had pled guilty in 1998 to charges under the federal arson statute, 18 U.S.C. § 844(I). *Id*. at 185-86.  Case law at the time interpreted § 844(i) as requiring the government to show the destroyed property had a *de minimis* connection to interstate commerce.  *Id.* at 190.  Following Davies's direct appeal, the Supreme Court narrowed the construction of § 844(i)'s interstate commerce element, finding it "covers only property currently used in [interstate] commerce or in an activity affecting [interstate] commerce."  *Jones v. United States*, 529 U.S. 848, 859 (2000). In *Davies*, petitioner contended counsel was ineffective for not raising the argument that proved successful in *Jones*.

The Court of Appeals acknowledged *United States v. McGuire*, 178 F.3d 203 (3d Cir. 1999), decided during briefing for Davies's direct appeal, "foreshadow[ed] . . . a heightened connection to interstate commerce might be necessary under § 844(i)," but "[did] not adopt such a heightened standard and . . . [did] not alter the legal landscape on the basis of which reasonable counsel at the time of Davies's appeal would have pursued an appeal."  *Davies*, 394 F.3d at 191 n.7.  The court explained

> Davies argues that his counsel had the same case law in front of her as the lawyers who later would challenge successfully in the Supreme Court the federal arson conviction at issue in *Jones*, and that his lawyer could have mounted a similar challenge to the interstate commerce element of § 844(i).  Davies's counsel, however, had no duty to predict that the arguments in *Jones* would become the law of the land, and did not act unreasonably in failing to advise Davies of its teachings before his guilty plea or in failing to rely on those teachings when pursuing Davies's direct appeal.

*Id.* at 190-91 (footnote omitted).

In *Sistrunk v. Vaughn*, petitioner argued appellate counsel was ineffective for not pursuing a jury selection equal protection claim, despite petitioner's request. 96 F.3d 666, 668 (3d Cir. 1996). After counsel in *Sistrunk* submitted the direct appeal brief to the Pennsylvania Superior Court, but before oral argument, the Supreme Court granted certiorari in *Batson v. Kentucky*, 476 U.S. 79 (1986). *Id.* at 668. *Batson* held the Equal Protection Clause is violated if a state prosecutor exercises a peremptory challenge to exclude a venire person from the jury because of her or his race. 476 U.S. at 96-98. In *Sistrunk*, the Court of Appeals declined to find counsel ineffective, stating:

> While we do not dispute that there were criminal defense lawyers who, like petitioner's trial counsel, predicted that a case like *Batson* might be decided as it was, we decline to hold that the performance of petitioner's appellate counsel was constitutionally deficient because she did not find the likelihood of that eventuality sufficient to alter her appellate advocacy strategy.

*Id.* at 671. The court noted the "well established principle that counsel decides which issues to pursue on appeal." *Id.* at 670.

Much like counsel in *Davies* and *Sistrunk*, Fahy's trial and appellate counsel were not ineffective for failing to raise an objection or defense predicting a change in the law. *Strickland* requires counsel perform in a manner that is objectively reasonable, on the facts of the particular case, viewed as of the time of counsel's conduct. 466 U.S. at 668-89. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 690. There is "no general duty on the part of defense counsel to anticipate changes in the law." *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In *Beard v. Banks*, the Supreme Court stated precedent "support[ed]" *Mills*, but did not "compel" it.

542 U.S. at 410.  The Court also surveyed the legal landscape of 1987, the year in which Mills's

— and Fahy's — convictions became final:[20]

> The generalized *Lockett* [*v. Ohio*, 438 U.S. 586 (1978),] rule (that the sentencer must be allowed to consider any mitigating evidence) could be thought to support the Court's conclusion in *Mills* and *McKoy* [*v. North Carolina*, 494 U.S. 433 (1990)].  But what is essential here is that it does not mandate the *Mills* rule.  Each of the cases relied on by *Mills* (and *McKoy*) specifically considered only obstructions to the sentencer's ability to consider mitigating evidence.  *Mills'* innovation rests with its shift in focus to individual jurors.  We think it clear that reasonable jurists could have differed as to whether the *Lockett* principle compelled *Mills*.

*Id.* at 413-14.

Objectively reasonable jurists can disagree whether case law compelled *Mills*.  The

failure of Fahy's counsel to raise an objection not compelled by existing precedent does not

constitute "failure to meet the level of competence required by the Sixth Amendment."  *Buehl v.

Vaughn*, 166 F.3d 163, 180 (3d Cir. 1999).  The tools for fashioning a *Mills*-like claim may have

been present.  Nevertheless, refraining from making a non-obvious objection to the verdict form

does not constitute constitutionally inadequate representation.  *Strickland* requires lawyers to be

competent, not exceptional.  Fahy's trial and appellate counsel were not ineffective for failing to

object to the verdict sheet suggesting the jury had to find unanimously any mitigating

circumstance before it could give effect to that circumstance.  Judge Sabo's opinion is neither

contrary to, nor an unreasonable application of, United States Supreme Court precedent.

Although Fahy's sentence would be unconstitutional today, he is not entitled to habeas relief on

this claim.

---

[20]  The jury returned guilty verdicts on all charges and sentenced Fahy to death on January 29, 1983.  The conviction and sentence were affirmed on direct appeal on October 21, 1986.  *See Fahy-1.*  Fahy's conviction became final on January 19, 1987, upon expiration of the 90-day period for seeking appellate review to the Supreme Court.  *Fahy*, 2003 WL 22017231, at *39.  The Supreme Court granted certiorari for petitioner Mills on December 7, 1987.  *Mills v. Maryland*, 484 U.S. 975 (1987).

**B.      Jury Instructions (Claim C, G, and H)**

In Claim C, Fahy argues that his death sentence violates the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the jury was not permitted to consider and give effect to the non-statutory mitigating evidence.  Fahy claims that the trial court's erroneous instruction precluded the jury from considering and giving effect to mitigating circumstance "h" on the verdict sheet.  Factor "h" reads:  "Any other mitigating matter concerning the character or record of the defendant or the circumstances of his offense."  Judge Sabo instructed the jury:

> The Crimes Code defines aggravating and mitigating circumstances.  I will not read off to you all of the aggravating circumstances and mitigating circumstances because the verdict sheet, which I will give to you, on page 2 contains all the aggravating circumstances.  They run from small letter "a" to the small letter "j."
>
> And the third page has the mitigating circumstances and they run from the small letter "a" to the small letter "f," and you can read them over to see which ones apply here.
>
> . . . .
>
> . . . All of the evidence from both sides, including the evidence you heard earlier during the trial-in-chief as to aggravating circumstances and mitigating circumstances is important and proper for you now to consider.
>
> . . . .
>
> . . . And, as I told you before, the mitigating circumstances are on the third page here and goes from the little letter "a" all the way to "f"; whichever one you find, you put a check mark in and you put it on the front here.

N.T. 1/29/1983 at 1040-43.  Through this instruction, the trial court omitted mention of mitigating circumstances "g" and "h."[21]

---

[21] There is no question that there is no reversible error in Judge Sabo's instruction concerning mitigating circumstance "g."  Mitigating circumstance "g" states: "The defendant's participation in the homicidal act was relatively minor."  There is not a reasonable probability that any juror would have found that this circumstance applied regardless of Judge Sabo's instruction.

Fahy first raised this claim in state court in his fourth PCRA petition. AEDPA's deferential standard does not apply to this claim because the fourth PCRA petition was not decided on the merits. *Fahy*, 516 F.3d at 189. The court "must conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." *Id.* at 189-90 n.20 (internal quotation marks and citation omitted).

The United States Constitution requires consideration in a capital case of any relevant mitigating evidence. *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982). "The jury must be allowed to consider and give effect to any mitigating evidence relevant to a defendant's [background and] character or the circumstances of the offense." *Penry*, 492 U.S. at 328 (1989) (abrogated on other grounds by *Atkins v. Virginia*, 536 U.S. 304 (2002)). It is not enough to allow the presentation of mitigating evidence; the court must give the sentencing jury a vehicle to consider and give effect to that evidence in imposing a sentence. *Id.* at 327. Although the entire jury must find an aggravating circumstance unanimously, a single juror may find a mitigating circumstance and vote against imposition of the death penalty. *Commonwealth v. Cox*, 863 A.2d 536, 553 (Pa. 2004).

If there is doubt as to the jury instruction's clarity, the court must consider the instruction's context. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Buchanan v. Angelone*, 522 U.S. 269, 278 (1998); *Boyde v. California*, 494 U.S. 370, 383 (1990). An instruction that might be ambiguous when read out of context may become clear when the instruction is read in full. *Jones*, 527 U.S. at 391. When a jury instruction is ambiguous, the proper inquiry is whether the jury likely applied the challenged instruction in a way that prevented consideration of constitutionally relevant evidence. *Boyde*, 494 U.S. at 380. A jury is presumed to have followed a court's instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

In *Penry*, the defendant presented mitigating evidence of his mental retardation and abusive childhood at his capital sentence hearing, but the court's instruction to the jury precluded consideration of that evidence.  The Supreme Court vacated the death sentence and, on remand, ordered the sentencing court to allow the jury to give weight to the mitigating evidence. *Penry*, 492 U.S. at 327-28.  Similarly, in *Eddings* the trial judge refused, as a matter of law, to consider in mitigation the circumstances of defendant's unfortunate upbringing and emotional disturbance. 455 U.S. 109.  The Court concluded that a sentencing body may determine the weight given to relevant mitigating evidence, but may not summarily exclude mitigating evidence from consideration.  *Id.* at 113-15.

The defendant in *Buchanan* alleged Eighth and Fourteenth Amendment violations when the trial court refused to consider his requests for additional instructions on particular mitigating factors and a general instruction on mitigating evidence.  522 U.S. at 275.  The jury heard two days of testimony about defendant's family background and mental and emotional problems and the judge instructed the jury to "consider all the evidence." *Id.* at 277.  The Court held that, because the jury was instructed to base its decision on "all of the evidence," the "instruction[s] did not foreclose the jury's consideration of any mitigating evidence." *Id.*  The Court found it unlikely the jury would disregard the extensive testimony and ignore the judge's instruction in deciding the sentence.

In *Boyde*, the defendant challenged the sufficiency of a catch-all mitigation instruction that stated:  "Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime." 494 U.S. at 374.  All of the defense evidence presented at the penalty phase related to the background and character of the defendant rather than to the circumstances of the criminal offense. *Id.* at 375.  The jury was instructed to consider all

evidence presented at any part of the trial, and the prosecutor never suggested disregarding the background and character evidence.  The Court held "there [was] not a reasonable likelihood that the jurors in petitioner's case understood the challenged instructions to preclude consideration of relevant mitigating evidence offered by petitioner," and that the jury instructions did not violate the Eighth or Fourteenth Amendments.  *Id.* at 386.

Here, Judge Sabo gave an erroneous instruction precluding consideration of factor "h." Judge Sabo did instruct the jury to consider "all of the evidence from both sides, including the evidence [the jury] heard earlier during the trial-in-chief as to aggravating and mitigating circumstances."  However, he twice gave the more specific instruction that the jury was to consider mitigating circumstances "a" through "f."

The Commonwealth contends the record contains a transcription error and that Judge Sabo instructed the jury to consider factor "h."  The transcript shows Judge Sabo instructed the jury twice that the relevant mitigating circumstances range was "a" through "f"; it is incredible that the court reporter transcribed both statements erroneously.  Even if this were only a "slip-of-the-tongue" error by the trial judge, as respondents suggest, the jury is presumed to follow the court's instruction.

Judge Sabo's failure to instruct the jury to consider mitigating circumstance "h" is particularly troublesome in this case.  Fahy's mitigation evidence consisted of testimony from himself and his mother.  Almost the entire testimony pertained to Fahy's character and upbringing, except for Fahy's brief statement about his *mens rea*, and his mother's fleeting recount of receiving a call from her son immediately after the crime.  N.T. 1/29/1983 at 1000-02, 1014.  During his closing argument, defense counsel relied heavily upon the testimony about Fahy's character and upbringing.  N.T. 1/29/1983 at 1018-33.  Factor "h" was the only mitigating

factor that did not pertain to the offense itself; the mitigating evidence presented at the sentencing phase was uniquely relevant to factor "h."  The court's failure to articulate factor "h" as a matter for the jury's consideration was particularly prejudicial.   As in *Penry* and *Eddings*, the court's jury instruction precluded the jury from fully considering evidence of Fahy's mental troubles and abusive childhood.  The jury found two mitigating factors ("b" and "c"), which were both relevant to his commission of the offense rather than his character and upbringing.[22]  It is reasonably probable that one juror would have been sympathetic to Fahy's mitigating evidence and might have imposed a sentence of life imprisonment had the court properly charged regarding the mitigating evidence.

The "sentencer in capital cases must be permitted to consider any relevant mitigating factor."  *Eddings*, 455 U.S. at 112.  It is reasonable that at least one juror was precluded from considering constitutionally relevant mitigating evidence pertinent to factor "h."  Judge Sabo's instruction directed the jury to consider a set of mitigating factors that excluded factor "h."  It is likely that the jurors did just that.  Fahy is entitled to habeas relief on this claim.

Fahy's challenge in Claim G regards the state court's instruction on the aggravating circumstance, "The offense was committed by means of torture."  42 Pa. Cons. Stat. § 9711(d)(8).  He contends the jury instruction just repeating the language of the aggravating circumstance statute is unconstitutionally vague under the Sixth, Eighth, and Fourteenth Amendments.  He first raised this claim in his fourth PCRA petition.[23]  AEDPA's deferential

---

[22]  Factor "b" states:  "The defendant was under the influence of extreme mental or emotional disturbance."  Factor "c" states:  "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."

[23]  The state court addressed certain aspects of the torture instruction in *Fahy-1*, 516 A.2d at  699-700 (sufficiency of the evidence to find the aggravating circumstance of torture), and *Fahy-3*, 645 A.2d at 202-04 (ineffective assistance of counsel for not objecting to the jury instruction regarding torture).  The specific vagueness challenge now before the court was not raised until the fourth PCRA petition.

standard does not apply to this claim because the fourth PCRA petition was not decided on the merits. *Fahy*, 516 F.3d at189. The court "must conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." *Id.* at 189-90 n.20 (internal quotation marks and citation omitted).

If a state has authorized capital punishment, the state must tailor and apply its law in a manner avoiding arbitrary and capricious infliction of the death penalty. *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980). The Constitution requires states to define crimes punishable by death by "clear and objective standards that provide specific and detailed guidance." *Id.* (internal quotation marks omitted). An aggravating circumstance must adequately inform the jury what it must find in order to impose the death penalty. *See Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988) (finding Oklahoma's statutory aggravating circumstances vague as applied).

The United States Supreme Court has never held "torture" as a statutory aggravating circumstance is unconstitutionally vague. In *Proffitt v. Florida*, the Court held constitutional an aggravating circumstance that the crime was "especially heinous, atrocious, or cruel," construed by the Florida Supreme Court as "the conscienceless or pitiless crime which is unnecessarily *torturous* to the victim." 428 U.S. 242, 255-56 (1976) (emphasis added). The Court found the factor was not unconstitutionally vague because "[w]e cannot say that the provision, *as so construed*, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases." *Id.* (emphasis added). Because in *Proffitt* the clarifying word "torture" was able to cure an otherwise vague statute, it is clear that no additional limiting construction was necessary in Fahy's action. The aggravating circumstance at issue — "[t]he offense was committed by means of torture"— provided a clear and objective standard for the

jury to apply in making a sentencing decision. There is no basis for federal *habeas* relief on this claim.

In Claim H, Fahy argues he is entitled to relief from his death sentence because the aggravating circumstance, "significant history of felony convictions involving the use of or threat of violence to the person," 42 Pa. Cons. Stat. § 9711(d)(9), is unconstitutionally vague absent a limiting instruction or a definition of the term "significant." This issue was decided on the merits in state court. *See Fahy-1*, 516 A.2d at 697-98. AEDPA's deferential standard of review applies.

States have considerable latitude in determining how to guide a sentencing decision. States must nonetheless ensure "the process is neutral and principled so as to guard against bias or caprice in the sentencing decision." *Tuilaepa v. California*, 512 U.S. 967, 973 (1994). A factor is constitutional so long as it reflects a "common-sense core of meaning . . . that criminal juries should be capable of understanding." *Id.* at 973-74 (citation omitted).

In *Tuilaepa*, the petitioner challenged as unconstitutionally vague the factor of "[t]he presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence." *Id.* at 976. The Court held this factor was not vague because it was phrased in "conventional and understandable terms and rest[ed] in large part on a determination whether certain events occurred, thus asking the jury to consider matters of historical fact." *Id.* at 976. In *Proffitt v. Florida*, the petitioner raised a challenge to the vagueness of a mitigating circumstance that employed the phrase "significant history" and argued that "neither a jury nor a judge [wa]s capable of . . . determining whether [petitioner] ha[d] a 'significant history of prior criminal activity.'" 428 U.S. at 257. The Court rejected the challenge and stated that making such a

33

determination requires "no more line drawing than is commonly required of a factfinder in a lawsuit." *Id.* 257-58.

The Pennsylvania Supreme Court reached the same result regarding another Pennsylvania statutory mitigating circumstance.  In *Commonwealth v. Beasley*, the Pennsylvania Supreme Court rejected appellant's contention that the phrase,  "significant history of prior criminal convictions," was "so vague as to invite arbitrary and capricious imposition of the death penalty." *Id.* at 737 (relying on *Proffitt*, 428 U.S. at 257 and using identical language).  *See also Commonwealth v. Goins*, 495 A.2d 527, 532 (Pa. 1985) (rejecting a vagueness challenge to "significant history" and reaffirming *Beasley*).

The United States Supreme Court has made clear that the language of the aggravating circumstance at issue is constitutional, and the Pennsylvania Supreme Court has relied on this precedent in the instant action and numerous others.  The Pennsylvania Supreme Court's interpretation of § 9711(d)(9) is neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.  This claim provides no basis for federal *habeas* relief.

### C. Prosecutorial Misconduct (Claims E & F)

Fahy alleges prosecutorial misconduct based on the prosecutor's statements regarding the death penalty and appellate review in Claim E.  Fahy argues the prosecutor's comments diminished the jury's sense of responsibility in violation of his Eighth Amendment right under *Caldwell v. Mississippi*.  *See* 472 U.S. 320, 328-29 (1985) ("[I]t is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.").  Fahy first raised the *Caldwell* violation in his third PCRA petition as a claim for ineffectiveness of counsel for failure to object.  The 1995 Opinion adjudicated that claim on the merits.  *See*

1995 Opinion, Conclusions of Law, ¶¶ 24-26.  Fahy raised the substantive *Caldwell* violation in the fourth PCRA petition, which was not decided on the merits.  Nevertheless, because the PCRA court reviewing the third PCRA petition addressed the underlying claim of misconduct in its findings of fact and conclusions of law, this constitutes an adjudication on the merits subject to deference under AEDPA.  *See Fahy*, 2003 WL 22017231, at *47 n.29.

During his final plea for Fahy's life, trial counsel informed the jury that Fahy was serving fifteen to thirty years for prior convictions.  N.T. 1/29/1983 at 1022.  The prosecutor responded: "Naturally, [Fahy's] doing a sentence now for [those] convictions, but he's appealing it.  *No sentence is final until it's appealed*."  N.T. 1/29/1983 at 1033-34 (emphasis added).  Judge Sabo addressed the jury on its role in balancing the aggravating and mitigating circumstances before sending the jury to deliberate.  He emphasized the jury's role in deciding the penalty: "Remember that you are not merely recommending punishment.  The verdict you return will actually fix the punishment at death or life imprisonment."  N.T. 1/29/1983 at 1041.  Defense counsel did not object to the prosecutor's remark or request additional instruction from the court as to the jury's role in determining the sentence.

Fahy argues the prosecutor's statement, "No sentence is final until it's appealed," violated *Caldwell* and *Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001).  In *Caldwell*, defense counsel sought to save his client's life by emphasizing the finality of a death sentence and pleading that the jury fully confront its grave responsibility.  The prosecutor responded by minimizing the jury's responsibility in deciding life or death:  "[Defense counsel] would have you believe that you're going to kill this man and they know — they know that your decision is not the final decision.  My God, how unfair can you be?  Your job is reviewable.  They know it."  *Caldwell*, 472 U.S. at

325.  After an objection, the trial court stated, "I think it proper that the jury realizes that it is

reviewable automatically as the death penalty commands."  *Id.*

The Supreme Court held the prosecutor's statements diminished the jury's sense of

responsibility and violated Eighth Amendment jurisprudence requiring capital sentencing bodies

understand their task as determining whether an individual should die.  *Id.* at 329.  A jury may be

informed of appellate procedure, but it may not receive "the mistaken impression that automatic

appellate review of the jury's sentence would provide the authoritative determination of whether

death was appropriate."  *Id.* at 342-43 (O'Connor, J., concurring).[24]  "*Caldwell* is relevant only to

certain types of comment — those that mislead the jury as to its role in the sentencing process in

a way that allows the jury to feel less responsible than it should for the sentencing decision."

*Darden v. Wainwright*, 477 U.S. 168, 183-84 n.15 (1986).

In *Riley v. Taylor*, the Court of Appeals found a *Caldwell* violation where the prosecutor

began his opening comments by stating:  "Let me say at the outset that what you do today is

automatically reviewed by our Supreme Court and that is why there is an automatic review on the

death penalty."  277 F.3d at 296.  The court found the reference to "automatic appellate review"

misleading in the same manner as the remarks in *Caldwell*.  *Id.* at 298.

The PCRA court, reviewing the third PCRA petition, held that this *Caldwell* claim was

"baseless."  *See* 1995 Opinion, Conclusions of Law, ¶ 28.  The PCRA court's application of

federal law was not unreasonable.  Unlike in *Caldwell* or *Riley*, the prosecutor did not directly

tell the jurors that their sentence was appealable — she was describing the procedural posture of

Fahy's prior rape convictions.  Moreover, the trial judge clearly impressed upon the jury the

gravity of its task.  The judge made clear that the jury's verdict was not a recommendation, but

---

[24]  *See Romano v. Oklahoma*, 512 U.S. 1, 9 (1994) ("As Justice O'Connor supplied the fifth vote in
*Caldwell*, and concurred on grounds narrower than those put forth by the plurality, her position is controlling.").

that the verdict would "actually fix the punishment at death or life imprisonment."  N.T. 1/29/1983 at 1041.  In this context, the prosecutor's comment did not diminish the jury's understanding of its grave responsibility.  Because the state court's determination of this claim was not an unreasonable application of federal law, this claim must be denied.

In Claim F, Fahy argues that his constitutional rights were violated due to two types of prosecutorial misconduct.  First, he claims that the prosecutor engaged in misconduct when she introduced unadjudicated criminal conduct in the sentencing proceeding.  Second, Fahy claims that the prosecutor engaged in misconduct by denigrating the defendant's mitigating evidence. Petitioner raised the first of these two claims in his third PCRA as an ineffective assistance of counsel claim.  *See* 1995 Opinion, Conclusions of Law, ¶¶ 31-33.  The PCRA court decided the substantive claim on the merits, so under AEDPA this court must accord deference to the PCRA court's conclusions.  *See Fahy*, 2003 WL 22017231, at *47 n.29.  The second of these claims was first raised in petitioner's fourth PCRA petition.  Because the fourth PCRA petition was not adjudicated on the merits, this claim is reviewed *de novo*.

During the sentencing phase of the trial, the prosecutor repeatedly questioned Fahy and his mother about uncharged sexual assaults.  The prosecutor indirectly suggested to the jury that Fahy:  (1) attacked his girlfriend's son, and the charges were dismissed only because the son was too young to testify; (2) attacked his sister's six year old son; and (3) sexually assaulted other girls who were too afraid to prosecute him.  N.T. 1/29/1983 at 1004-07, 1013.  Fahy alleges the prosecutor violated Pennsylvania law by introducing unadjudicated criminal conduct, and that under *Hicks v. Oklahoma*, 447 U.S. 343 (1980), Pennsylvania's failure to comply with the dictates of its law violated Fahy's Fourteenth Amendment liberty interest.  Fahy also claims that trial and appellate counsel were ineffective for failing to raise this claim.  In the 1995 Opinion,

Judge Sabo issued detailed conclusions of law regarding the cross-examination of Fahy and his mother.[25]

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997) ("[A] state court's misapplication of its own laws does not generally raise a constitutional claim"). Some state statutes create due process rights, and violations of such statutes can be grounds for habeas relief. *See Hicks*, 447 U.S. at 346-47. The Pennsylvania Supreme Court has ruled that unadjudicated criminal conduct may not be discussed during sentencing in a capital case. *Commonwealth v. Hoss*, 283 A.2d 58, 69 (Pa. 1971); *see also Commonwealth v. McCoy*, 172 A.2d 795, 799 (Pa. 1961). Pennsylvania law allows the prosecutor to respond when the defendant or defense counsel opens the door for a discussion of unadjudicated criminal conduct. *See, e.g., Commonwealth v. Edmiston*, 851 A.2d 883, 899 (Pa. 2004) ("[A]lthough it might have been improper for the prosecutor to have initiated

---

[25]
      31. Trial counsel was not ineffective for electing not to object to the prosecutor's cross-examination of defendant during the penalty phase hearing concerning previous sexual assaults (N.T. 1004-06). According to trial counsel's PCRA hearing testimony, which this Court credits, counsel believed that defendant's answers to the questions were helpful to his defense, as they showed defendant to be honest and sincere. In addition, defendant opened the door to this line of questioning when he testified on direct examination that he felt a compulsion to attack young girls. (N.T. 993-96, 1002-04).
      32. The prosecutor also properly examined defendant on his past sexual assaults because he placed his character at issue during the penalty phase hearing. Based on defendant's testimony and the testimony of his mother, trial counsel argued that defendant's life should be spared because he supposedly was a "kind, decent individual who went astray" (N.T. 1029-30). The prosecutor properly responded to that tactic by asking defendant about previous sexual assaults which would suggest that defendant was not so "decent." [citation].
      33. Even if the cross-examination were arguably improper, defendant has not sustained his burden of showing prejudice and an inherently unreliable verdict. Defendant has not shown that if only the prosecutor had not asked defendant about his prior sex assaults, the jury likely would have sentenced him to life imprisonment.

1995 Opinion, Conclusions of Law, ¶¶ 31-33.

an examination concerning a prior acquittal, the calculus is entirely different when the defense opens the door to the subject.").  A prosecutor may also respond to assertions about defendant's good character by referring to past unadjudicated criminal conduct.  *See Commonwealth v. Rice*, 795 A.2d 340, 356 (Pa. 2002).  When assessing a claim of prosecutorial misconduct, the "[c]ourt must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly"; relief is appropriate only when the prosecutor's behavior "undermine[s] the fundamental fairness of the trial."  *United States v. Young*, 470 U.S. 1, 12, 16 (1985).

Fahy argues Pennsylvania's bar on the admission of unadjudicated criminal conduct creates a Fourteenth Amendment liberty interest under *Hicks*.  In *Hicks*, the defendant was found guilty of a drug offense and sentenced to a mandatory forty-year prison term in accordance with the applicable habitual offender statute.  447 U.S. at 344-45.  The state appellate court later found unconstitutional the statute mandating the forty-year sentence.  The defendant, on direct appeal, asked to have his sentence set aside in light of the new precedent.  *Id*. at 345.  The appellate court held the defendant was not prejudiced by the invalid statute because his sentence was in the range of punishment that could have constitutionally been imposed.  *Id.*  The Supreme Court determined the state had deprived the petitioner of due process, because when "a State has provided for the imposition of criminal punishment in the discretion of the trial jury . . . [t]he defendant . . . has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion."  *Id.* at 346.

Case law does not support Fahy's contention that Pennsylvania's bar on the admission of unadjudicated criminal conduct creates a *Hicks*-like liberty interest.  *Hicks* involved a unique situation where a fundamental error forced a jury to return a verdict for a sentence four times

longer than actually required.  *See Taylor v. Horn*, 504 F.3d 416, 449 (3d Cir. 2007) (error must

create prejudice implicating defendant's federal rights); *Johnson v. Rosemeyer*, 117 F.3d 104,

112 (3d Cir. 1997) (same); *Geschwendt v. Ryan*, 967 F.2d 877, 890 (3d Cir. 1992) ("[I]n *Hicks*

the jury was given an erroneous instruction on substantive state law which forced it to return a

verdict for a sentence four times longer than required, a fundamental error indeed.").  In Fahy's

case, the prosecutor's error — if any — did not prejudice Fahy like the unconstitutional statute

prejudiced Hicks.  Not "every error of state law affecting the outcome of a state criminal

proceeding [is] cognizable as a due process claim." *Johnson*, 177 F.3d at 112.

Fahy has also failed to establish that the prosecutor's comments were improper in view of

the evidence and Fahy's testimony on direct examination.  Fahy's explanation of his compulsion

to have relationships with young girls opened the door to the cross-examination he now contests.

N.T. 1/29/1983 at 993-96.  He testified to having an internal impulse to commit sexual assault.

*Id.* at 1002.  The prosecutor could inquire about this "problem with young girls." *Id.* at 1004,

1012.  To the extent  the prosecutor's questions exceeded the bounds of permissible advocacy,

the remarks did not undermine the fundamental fairness of the trial because the Commonwealth

had already introduced evidence of Fahy's prior convictions for rape, attempted rape, and

attempted involuntary deviate sexual intercourse.  N.T. 1/29/1983 at 973-78.  The PCRA court

was not unreasonable in finding that there was no prosecutorial misconduct because of the

context of the comments.

Fahy contends the prosecutor disparaged Fahy's mitigating evidence in violation of his

constitutional rights under the Eighth and Fourteenth Amendments.  The prosecutor argued:

> Does it take three victims before the people can be heard, before you
> can tell Henry Fahy that his life should not be spared? He's smart
> enough to know it himself, in fact he has attempted suicide.

> . . . .
>
> Nicky Caserta can't grow up and she can't reach the age that he is, which Mr. Greene thinks is young.
>
> . . . .
>
> The mitigating circumstances when the Legislature said age, I don't believe that they meant twenty-four, I think they were referring to somebody that's very young, maybe sixteen, and at that age would be considered.
>
> . . . .
>
> The only reason he's being treated [psychiatrically] is because of his alleged suicide attempts.  Well, ladies and gentleman, if you bring back a death penalty, he won't have to worry about that.

N.T. 1/29/1983, at 1033, 1038, & 1038-39.  Because of a jury's faith in the proper conduct of prosecutors, "improper suggestions, insinuations, and, especially, assertions of personal knowledge [by a prosecutor] are apt to carry much weight against the accused when they should properly carry none."  *Berger v. United States*, 295 U.S. 78, 88 (1935).

Viewed in context, the prosecutor's statements did not so prejudice the defendant as to compromise the trial.  Fahy's trial counsel invited the prosecutor's comments by discussing the mitigating circumstances of his client's age[26] and mental state when committing the crime.  In response, the prosecutor suggested age is considered only in mitigation in cases involving a defendant younger than Fahy.  "Both the prosecution and the defense may present valid arguments as to the significance of the defendant's age in a particular case.  Competing arguments . . . bring perspective to a problem, and . . . promote a more reasoned decision, providing guidance as to a factor jurors most likely would discuss in any event."  *Tuilaepa*, 512 U.S. at 977.  The prosecutor did not misrepresent Pennsylvania law.  Pennsylvania state courts

---

[26] Trial counsel repeatedly referred to petitioner as a "young man."  N.T. 1/29/1983, at 1020, 1023, 1026, 1028, 1029.  Counsel also argued that age was a mitigating factor in this case, *id.* at 1028-29, and that the jury should "spare this young man's life."  *Id.* at 1031.

41

had ruled that ages younger than twenty four (Fahy's age at the time of the crime) did not

necessarily qualify for the mitigating circumstance of young age, and allowed prosecutors to

argue to juries accordingly.  *See, e.g., Commonwealth v. Hughes*, 865 A.2d 761, 800 (Pa. 2004)

(age of sixteen does not necessarily qualify for mitigating circumstance of age); *Commonwealth*

*v. Reid*, 642 A.2d 453, 457-58 (Pa. 1994) (trial court, discussing the mitigating circumstances of

a twenty year-old defendant, did not err in instructing the jury that eighteen is the age of majority

and that the Supreme Court had allowed capital punishment for sixteen year-olds).[27]

     The prosecutor's discussion of Fahy's mental health was also reasonable given the

context.  On numerous occasions, Fahy's trial counsel referenced defendant's suicide attempts

and the fact that he was in a mental health hospital.  N.T. 1/29/1983, at 997-98, 1000-01.  The

prosecutor correctly countered that Fahy was in the hospital because of his suicide attempts, not

for treatment of a mental illness.  *Id.* at 1038.

     The prosecutor's comment that if the jury returned a death sentence Fahy would not have

to worry about committing suicide was an improper appeal to the jury.  *United States ex rel.*

*Perry v. Mulligan*, 544 F.2d 674, 680 (3d Cir. 1976) ("[A]n improper appeal . . . is directed to

passion or prejudice rather than to an understanding of the facts and of the law."); *see also Lesko*

*v. Lehman*, 925 F.2d 1527, 1545 (3d Cir. 1991).   As the court in *Lesko* stated, for a prosecutor's

inappropriate comments to provide habeas relief, they must have "so infected the trial with

unfairness as to make the conviction a denial of due process." 925 F.2d at 1546 (internal citations

omitted).  The prosecutor's statement, made while responding to the relevance of Fahy's stay in

the mental health hospital, did not meet this threshold of unfairness.  *See, e.g.*, *Young*, 470 U.S.

---

[27] At the time of the jury instruction in *Reid*, the Supreme Court's decision in *Stanford v. Kentucky*, 492 U.S. 361 (1989) (imposition of capital punishment on an individual for a crime committed at 16 or 17 years of age did not constitute cruel and unusual punishment under the Eighth Amendment) was still good law.

at 12-13 (if prosecutor's statements were invited by defense counsel and did no more than

respond substantially in order to "right the scale," such comments would not be prejudicial

error).

The prosecutor's behavior did not "undermine[] the fundamental fairness of the trial."

*Young*, 470 U.S. at 12, 16.  Fahy is not entitled to habeas relief on this claim.

## V.    CONCLUSION

For the reasons discussed above, Fahy's petition for *habeas* corpus relief will be granted

as to:  (1) Claim A ("trial counsel was ineffective at sentencing phase for failing to reasonably

prepare for capital sentencing and failing to develop and present available and compelling

mitigating evidence") and Claim D ("trial counsel was ineffective during the sentencing phase

for suggesting Mr. Fahy would likely be released on parole"); and (2) Claim C ("Fahy's death

sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution

because the jury was not permitted to consider and give effect to the non-statutory mitigating

evidence that was presented").  His remaining claims for relief will be denied.  An appropriate

order follows.